## SWENZEL et al. v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
November 1, 1927.

No. 165.

**1. Intoxicating liquors ⊜238(1)—Issue of guilt held for jury in prosecution for manufacturing beer and possessing beer and brewery equipment.**

In prosecution for unlawfully manufacturing beer and possessing beer and brewery equipment found on farm premises, evidence *held* to make issue for jury as to guilt of defendants, who were only persons identified as being about premises at time of search.

**2. Criminal law ⊜1172(2)—Instruction that testimony of defendant was to be considered as that of other witnesses held not prejudicial to codefendant, not testifying.**

In prosecution of two defendants, in which only one of persons accused took stand in his own behalf, instruction that defendant testifying should be considered as competent witness, and his testimony treated as that of other witnesses, *held* not prejudicial as to codefendant who failed to testify, especially in absence of exception.

**3. Criminal law ⊜1173(2)—Refusal of requested instruction that defendant's failure to testify created no presumption against him held not prejudicial.**

In prosecution of two defendants for violation of liquor law, refusal of requested instruction that failure of one defendant to testify did not create any presumption against him *held* not prejudicial, especially where requested instruction related also to presumption of innocence and burden of proof, which matters court had fully covered in other instructions.

**4. Criminal law ⊜829(9)—Request for charge on defendant's failure to testify should not state other matters covered in main charge.**

Defendant, who desires charge relative to his failure to testify should submit such charge as a separate request, without stating therein matters otherwise covered, or should at least except specially to failure to charge particular portion of request, where instruction requested covers other matters.

In Error to the District Court of the United States for the Southern District of New York.

John L. Swenzel and William Bindel were convicted of unlawfully manufacturing beer and unlawfully possessing beer and brewery equipment designed for the manufacturing of intoxicating liquors, and they bring error. Affirmed in part, reversed in part, and remanded.

John L. Swenzel and William Bindel were convicted of unlawfully manufacturing beer, unlawfully possessing beer, and unlawfully possessing brewery equipment designed for the manufacture of intoxicating liquors. Affirmed as to the first count, and reversed as to the second and third counts, with direction that the plaintiffs in error should be remanded to the District Court for resentence on judgment of conviction on the first count.

On June 7, 1927, Prohibition Agents Plunkett and Mullaney, when approaching a farmhouse at Pearl River, N. Y., occupied by John L. Swenzel and his family, smelled an odor of brewed beer. Plunkett got out of his car and walked to a barn, which was between 150 and 175 feet from the house, where he found a number of barrels containing malt and seven 500-gallon vats full of beer; an oil burner under a cooking vat was also discovered there, as well as two 50-gallon barrels of malt syrup, and three 25-gallon barrels of hop syrup and about 100 pounds of hops. The 500-gallon vats were built up on a stand about 4 feet from the barn floor, and the water supply to the brewing equipment, as well as the electricity, led from the adjacent farmhouse; the water connection having been recently installed.

Swenzel was not upon the premises when the prohibition agents arrived, but he came shortly afterwards, and Agent Plunkett testified that he told him that the premises belonged to his father, that he had lived there a couple of months, had leased them from his father for $30 a month, but that the latter was going to sell them; also that he did not own the barn or the beer, and that he did not know what was in the barn, but had been in there from time to time for tools, and kept a rake there.

Agent Mullaney testified that a shirt was found in the barn which Swenzel at first admitted to be his, but denied ownership of, when he learned that it came from the barn. Mullaney also testified that, when Swenzel was told that his wife had said he worked in the barn evenings, he laughed and walked away.

Swenzel took the stand and testified that the property belonged to his father; that the latter said he had sold it, and Swenzel would have to leave; that people came to the barn with trucks and installed the water tank next to the house, which supplied the barn. Swenzel did not produce any deed to his father, or lease to himself, or call his father to prove the latter's ownership of the farm, or the alleged sale of it. He was unable to give the names of the purchasers or of the workmen in the brewery. He denied that he ever saw beer barrels in front of the barn, though the agents found them there, and he evidently passed the place constantly, and he also denied that he ever was in the barn.

When the agents came to the place, Bin-

del was lying in a hammock, and when he was informed of their presence by Mrs. Swenzel attempted to flee. His explanation of his apparent flight was that he was running in a field to catch wild rabbits in his bare hands, which he claimed was his method of hunting them. Swenzel explained Bindel's presence at the farm by saying that Bindel was there upon invitation to take a short vacation, because he did not feel very well. A memorandum book was discovered in Bindel's room containing notations:

"29 April 2 brew.
"30 April 2 brew."

This little book certainly leads to the inference that he was connected with the brewery. When he was arrested, he gave the name of Lang; whereas he later said it was Bindel.

The judge gave a fair charge to the jury, telling them that they were the sole judges of the facts, informing them that the presumption of innocence continued with the defendants throughout the entire trial, and that the government had the burden of proving the offenses charged beyond a reasonable doubt. Swenzel took the stand; Bindel did not. When referring to Swenzel in the charge, the judge said:

"He has the right to take the stand and testify. When a defendant takes the stand and testifies in his own behalf, he is a competent witness, and you must consider his testimony the same as you would that of any other witness, of course keeping in mind the interest he has in the outcome of the case."

There were no exceptions to the charge on behalf of either defendant, but there were three requests to charge, the failure to charge one of which is assigned as error. That request was as follows:

"The defendant Bindel is entitled to the presumption of innocence until his guilt is established beyond a reasonable doubt, and his failure to testify does not create any presumption against him."

The court refused this "to the extent not covered in the general charge."

The assignments of error are directed to the general insufficiency of the evidence to support the crimes charged and to the refusal of the court to charge the jury as requested.

Louis Halle, of New York City (Nathan April, of New York City, of counsel), for plaintiffs in error.

Charles H. Tuttle, U. S. Atty., of New York City (J. Edward Lumbard, Jr., Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before SWAN and AUGUSTUS N. HAND, Circuit Judges, and KNOX, District Judge.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). [1] There seems to be no doubt that there was a proper case made for submission to the jury. In the case of Swenzel, he was close by the brewery, the water and electricity came from his house, and a shirt, which he at first admitted to be his, was found in the brewery. There seems every reason to believe that Swenzel testified falsely about the ownership of this shirt, and also about his ignorance of what was going on in a place next to his residence, where a brewery was being installed and trucks were coming and going. He was unable to identify any other persons connected with the enterprise, and he and the defendant Bindel, with another defendant Schwertz, against whom the information was dismissed, were the only persons identified who were about these premises. Swenzel's story of the sale of the property and the installation of the brewing plant by the purchasers is uncorroborated by any witness, and stands upon his own unsupported oath.

Bindel's attempted flight, his assumed name and fantastic story about catching rabbits in his hands, coupled with the entries in his memorandum book of the number of brews on certain days in April, made a strong case against him. The jury evidently believed the testimony of the government and thought that it sustained the information filed against both defendants. We can find no insufficiency of evidence preventing the submission to the jury.

[2] In respect to the failure to charge as requested, it is to be noted that there was no exception by either defendant to the charge as such. The statement that Swenzel had the right to take the stand, and that when he took the stand and testified in his own behalf he was a competent witness, and that the jury must consider his testimony as it would that of any other witness, keeping in mind the interest he had in the outcome of the case, was favorable to Swenzel. It called the attention of the jury to the fact that Swenzel, though a defendant, and as such having an interest in the outcome of the case, ought to have his testimony considered as that of any other witness. It was a sort of counterpart of the caution frequently recommended in weighing the testimony of an accomplice.

It is suggested that these remarks tended to call the attention of the jury, to the fact that Bindel did not take the stand; but, if so, no exception was taken to them, and they may, especially in view of the acquiescence of counsel in this part of the charge, be regarded as directed to Swenzel, with no thought of Bindel on the part of the court, counsel, or the jury.

[3] It was recently argued before this court in the case of Becher v. United States, 5 F.(2d) 45, that it was reversible error for the trial judge, without request from a defendant, to charge the jury that no inference of guilt could be drawn from his failure to take the stand. It was argued that any allusion to the fact was reversible error. The court said as to this contention (page 49):

"It is no doubt better, if a defendant requests no charge upon the subject, for the trial judge to say nothing about it; but to say that, when he does, it is error, carries the doctrine of self-incrimination to an absurdity."

Undoubtedly to say anything about the failure of a defendant to testify tends to keep that prejudicial consideration before the jury. If it is better, as this court has said, not to mention it unless requested, how can it be error not to deal with it, even if requested? It would seem strange that the request of a defendant, or his counsel, could make a charge compulsory which a court holds it better practice in general not to give. It is at least problematical whether mentioning Bindel's right not to take the stand would not have impressed upon the jury a comparison between him and Swenzel, when as matters stood Swenzel might have been regarded as covering the ground for both defendants, so that no further testimony was necessary. In other words, if Bindel chose to exercise his constitutional right and not to testify, it seems exceedingly doubtful whether his situation would not have been prejudiced in fact by acceding to the charge requested.

[4] Moreover, the request contained a further reiteration of the charge already given respecting the presumption of innocence and the burden of proof. It is common to attempt by reiterations in requests to charge so to impress these considerations upon a jury that they may come to feel that scarcely anything can be regarded as beyond a reasonable doubt. Even if that portion of the charge as to Bindel's failure to testify should have been given by itself, it was coupled with other requests as to matters which the judge had amply covered. If the defendants

wished the charge about Bindel's failure to testify to be given separately, they should have submitted it as a separate request, or, in any event, should have especially excepted to the failure to charge that portion of the request, so as to bring the matter sharply to the attention of the judge.

The judgment is affirmed on the first count, and reversed upon the confession of error on the second and third counts, and the plaintiffs are remanded to the District Court for resentencing on judgment of conviction on the first count.