UNITED STATES, Appellee

v

CHARLES R. ALLINDER, Airman First Class,
U. S. Air Force, Appellant

9 USCMA 575, 26 CMR 355

No. 11,169

Decided September 12, 1958

*Captain Norman J. Nelson* argued the cause for Appellant, Accused.
With him on the brief was *Colonel Ellis L. Gottlieb*.

*Major Carl Goldschlager* argued the cause for Appellee, United States.
With him on the brief was *Lieutenant Colonel Robert W. Michels*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This is an appeal from a conviction by a general court-martial sitting in Madrid, Spain, for assault with a dangerous weapon and attempted escape from custody. The point in issue is whether the accused was prejudiced by the law officer's statement that defense counsel could establish a particular matter "by asking the accused questions."

As a result of a fight in a nightclub, the accused was brought to the Central Police Station in Zaragoza, Spain. He was seated upon a bench in one of the rooms. In the same room was Catalan, a policeman who had just come on duty. Catalan testified that as he went to the door leading to the street, the accused leaped upon him from behind, and attacked him with a knife. The noise of the scuffle attracted the Police Inspector. He came out of an adjoining room and saw the accused holding Catalan. He separated them with such force that both Catalan and the accused fell to the floor. The accused got to his feet and started to continue the

575

fight, but Catalan apparently struck him with the stock of his carbine. Catalan then fainted, apparently from loss of blood, and the accused was subdued by several Spanish policemen.

At the trial, defense counsel attempted to raise the theory of self-defense. He contended that Catalan started the fight. To prove the point, he called the Police Inspector as a "hostile" defense witness. Examined through an interpreter, the Inspector's testimony was vague; many answers were irrelevant to the questions. Still, it clearly appeared he was in another room when the altercation began and, therefore, he could not say who was the aggressor. After a time, trial counsel interposed an objection. The discussion that followed provides the basis for this appeal.

"TC I am going to object. I have been listening to this line of questioning. What are we trying to establish? What I hear is something that is completely immaterial. This man may or may not have been injured, as the photos show, some time after the events took place, of which he is accused and charged.

"If that is the case, they are completely immaterial. On other facts —if on the other hand, if we are trying to show the statement is for impeaching thee [sic] witness, we have to remember this is the defense counsel's witness. Hostile or otherwise, we shouldn't continue.

"DC I simply would like to point out in rebuttal to the fact that the inspector has testified he didn't know who started the fight; nobody knows. We are in the dark as to who started the fight.

"Now, if we can show from the witness's testimony he doesn't know who started the fight; if we can also show that the accused was beat up, I think it is very relevant on the part of the accused—self defense. A man has a right to protect himself against a beating.

"LO Let me ask you, is it your contention, or are you trying to establish that the events that you are asking this officer to describe, occurred prior to or after?

"DC I think they are all a pattern of one act. They are closely interwoven; you can't separate them.

"LO Are you trying to establish that the accused was beaten before any activity on his part, is that what you are trying to do?

"DC I am trying to establish from the testimony of this witness, and I think that he has already admitted he doesn't know, the accused was fighting for his life in this police station.

"LO *I think you can establish what your're [sic] trying to establish by asking the accused questions.*

"Now, if he made such and such a statement at a prior time, to that extent I sustain the objection by trial counsel." [Emphasis supplied.]

Defense counsel did not object to the italicized remark by the law officer.[1] Examination of the witness was continued.

The law officer cannot comment upon the failure of the accused to take the witness stand. Paragraph 72b, Manual for Courts-Martial, United States, 1951. Neither can he directly or indirectly indicate that the accused should or must testify.

The board of review below held the law officer's comment was error, but it concluded the error had no impact on the court-martial because the issue of self-defense was not raised. This is too narrow a view of the effect of the statement. The remark is not limited to a matter not in issue in the case; rather it called upon the accused to testify on the merits. Speaking of a similar request, the Court of Appeals for the Ninth Circuit said, "it is error to request a defendant in a criminal case in the presence of a jury to testify or produce documents against his will, although he makes no objection

---

[1] It would seem as though the law officer meant to use the word "witness" instead of "accused." But even if "accused" was a "slip of the tongue," it

was in fact used and remained uncorrected. We must determine its impact on the court-martial on that basis.

thereto." Himmelfarb v United States, 175 F2d 924, 944 (CA9th Cir) (1949). In our opinion, the law officer's general instruction to disregard any comment he may have made in regard to. the guilt or innocence of the accused did not cure the error.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

It is axiomatic in most civilian jurisdictions that the judge, and certainly in the military that the law officer, may not comment upon the failure of the accused to take the witness stand. Paragraph 72b, Manual for Courts-Martial, United States, 1951. Neither can he directly or indirectly lead the court-martial to believe the accused should testify. Therefore, it follows logically that a suggestion of the law officer in open court that he believes the accused might be able to furnish answers to the questions propounded to other witnesses by defense counsel is violative of accused's rights if he later fails to testify.

The board of review considered the law officer's comment to be error but concluded it had no impact on the court-martial because the issue of self-defense was not raised. In its opinion, the board rationalized:

". . . Had there been the slightest suggestion *in the evidence* that the accused acted in self-defense, the court, bearing in mind the law officer's comment, may have waited to hear from the accused on that matter, and upon his failure to testify, may have made an adverse inference because of his silence. But, as discussed hereinabove, it was plain that the accused was not acting in self-defense. A request for an instruction as to that defense was denied by the law officer. And when the law officer had completed his instructions at the end of the case, the defense counsel objected to them as incomplete, enumerating four instructions he claimed should have been included. Significantly the instruction on self-defense was not mentioned. Nor does appellate defense counsel urge that such an instruction should have been given." [United States v Allinder, ACM 14486, November 4, 1957.]

Unless I misinterpret the language of the board, it did not go far enough to reach the critical question. True it is that self-defense was not raised, but I suspect the court members, being reasonable persons, would speculate as to the reason why the accused did not become a witness and supply the desired information. Particularly would this be true when the law officer had invited defense counsel to furnish the evidence through the testimony of the accused. While the court members might only connect the accused's failure to testify with an affirmative defense, that might be sufficient to cast upon him the burden of becoming a witness under pain of an adverse presumption for his failure to accept the invitation.

Yet there is another facet to this appeal, also mentioned by the board of review, which bars the accused from obtaining a reversal namely, the failure of defense counsel to raise an objection to the law officer's statement. If he had done so, I am confident the law officer would have realized his error and instructed the court-martial accordingly. Concededly, under a different factual situation, an error of the same nature could so infest the findings that a curative instruction would have no efficacy. In such a case I would, of course, not apply the doctrine of waiver. See United States v Fisher, 4 USCMA 152, 15 CMR 152. However, I cannot overemphasize the necessity of raising a proper objection to an inadvertent comment uttered during the frequent discussions which occur in trials, when timely intervention would allow the law officer to purge any possible prejudice which might flow therefrom. Language illustrative of the point I am trying to make is found in Wilson v United States, 149 US 60, 13 S Ct 765, 37 L ed 650 (1893). In that case, the district attorney made a comment upon

the accused's failure to testify. In the course of its opinion, Mr. Justice Field, speaking for the Supreme Court, expressed the principle that the effect of a comment on the failure of a defendant to testify could be purged by a curative instruction. I refer to this language:

". . . he [the prosecutor] intimated to them as plainly as if he had said in so many words that it was a circumstance against the innocence of the defendant that he did not go on the stand and testify. Nothing could have been more effective with the jury to induce them to disregard entirely the presumption of innocence to which by the law he was entitled, and which by the statute he could not lose by a failure to offer himself as a witness. And when counsel for defendant called the attention of the court to this language of the district attorney it was not met by any direct prohibition or emphatic condemnation of the court, which only said: 'I suppose the counsel should not comment upon the defendant not taking the stand.' It should have said that the counsel is forbidden by the statute to make any comment which would create or tend to create a presumption against the defendant from his failure to testify."

A proper curative instruction could have rendered harmless the remarks made by the law officer in the instant case. And defense counsel was in the best position to know if the remark would be of any significance because he and the accused were the only persons who knew whether the latter would testify. Before the comment, the accused had taken the witness stand to testify on one of the points of law he had raised, and defense counsel led the law officer to believe the primary issue was self-defense. His cross-examination of his own hostile witness gave credence to his tactics of defense, and any reasonable law officer would have concluded an accused would, in all probability, be the principal witness to support that affirmative theory. At the time of the statement, the defense had not concluded the presentation of its evidence, and the law officer was confronted with an unusual situation. Defense counsel conceded the witness being examined did not know the answer, and yet he sought to elicit a positive statement that the victim was the aggressor. The purpose of the law officer's comment, as I see it, was to suggest to counsel that further questioning of the witness would be unproductive, and the uncertainty bothering the defense could be rendered certain by the accused. Had the accused become a witness on the merits, the comment would not have been inappropriate. Although at the moment it was made, the remark may have been untimely, it was not a deliberate attempt to place the accused at a disadvantage. It was buried in a colloquy concerning the propriety of defense counsel's method of attempting to elicit evidence, and no one at the trial considered the comment of sufficient importance to be noticed. Under these circumstances, to save the error for consideration on appeal, an objection was necessary.

The error herein committed is not of the variety which may not be waived because of a denial of due process. This is apparent when consideration is given to the following factors: the evidence of guilt on this specification is overwhelming, no affirmative defense was reasonably raised, the instructions cautioned the court not to consider comments by the law officer, and there is proof in the record that the injudicious statement did not cause the court-martial members to use an improper yardstick in assessing guilt, for the accused was found not guilty of two assault offenses allegedly committed at substantially the same time.

The decision of the board of review should, therefore, be affirmed.